## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **WASHINGTON MUTUAL BANK, FA** | ) | **FORECLOSURE** |
| | ) | |
| **plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **No.**    FILED: AUGUST 8, 2008 |
| **JORGE TORRES, JUANA TORRES, BANK OF** | ) | 08CV4505 |
| **WAUKEGAN, n/k/a NORSTATES BANK, as** | ) | JUDGE GUZMAN |
| **Trustee under Trust Agreement dated April** | ) | MAGISTRATE JUDGE VALDEZ |
| **14, 1993, and known as Trust No. 203891,** | ) | EDA |
| **CHICAGO TITLE LAND TRUST COMPANY,** | ) | |
| **as successor Trustee under Trust Agreement** | ) | |
| **dated April 14, 1993, and known as Trust** | ) | |
| **No. NS203891, and FOREVER CONSTRUCTION,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **defendants.** | ) | |

## COMPLAINT

### JURISDICTION AND VENUE

1.    Plaintiff is a Federal Savings Association whose principal place of business is in the State of Nevada, and it is a citizen of Nevada.

2.    Defendants Jorge Torres and Juana Torres are residents of Waukegan, Illinois, and are citizens of Illinois; defendant Bank of Waukegan, now known as Norstates Bank, as Trustee under that certain Trust Agreement dated April 14, 1993 and known as Trust No. 203891, is a corporation organized under the laws of the State of Illinois having its principal place of business in Waukegan, Illinois, defendant Chicago Title Land Trust Company, as successor Trustee under that certain Trust Agreement dated April 14, 1993 and known as Trust No. NS203891, is a corporation organized under the laws of the State of Illinois having its principal place of business in Chicago, Illinois, and defendant Forever Construction, Inc. is a corporation organized under the laws of the State of Illinois, having its principal place of business in Waukegan, Illinois.

3.    The amount in controversy, exclusive of costs and interest, exceeds the sum of $75,000.00, and this court has diversity jurisdiction under 28 U.S.C. §1332.

4.    Venue is proper in this District under 28 U.S.C. §1391(a) because a substantial part of the events giving rise to the claims alleged herein occurred in this District, and all defendants reside in this District.

## FOR FORECLOSURE OF A MORTGAGE

Plaintiff, Washington Mutual Bank, by its attorney, John K. Kallman, for its Complaint to Foreclose Mortgage, states as follows:

1-4. Plaintiff realleges the allegations regarding jurisdiction and venue contained in paragraphs one through four.

5.    Plaintiff files this Complaint to Foreclose Mortgage to foreclose the mortgage, trust deed or other conveyance in the nature of a mortgage (hereinafter called "Mortgage") hereinafter described and joins the following persons and entities as defendants:

> Jorge Torres, Juana Torres, Bank of Waukegan, now known as Norstates Bank, as Trustee under that certain Trust Agreement dated April 14, 1993 and known as Trust No. 203891, Chicago Title Land Trust Company, successor Trustee under that certain Trust Agreement dated April 14, 1993 and known as Trust No. NS203891 and Forever Construction, Inc.

6.    Attached hereto as Exhibit A is a copy of the Mortgage, and as Exhibit B is a copy of the Note secured thereby.

7.    Information concerning Mortgage:

A.    Nature of instrument:    Mortgage, Security Agreement, Assignment of Rents and Fixture Filing.

B.    Date of Mortgage: September 19, 2003.

C.    Name of mortgagor:    Bank of Waukegan, now known as Norstates Bank, as Trustee under that certain Trust Agreement dated April 14, 1993 and known as Trust No. 203891.

D.    Name of mortgagee:  Washington Mutual Bank, FA.

E.    Date and place of recording: September 29, 2003, in the Office of the Recorder of Deeds of Lake County, Illinois.

F.    Identification of recording:    Document No. 5383695.

G.    Interest subject to mortgage:      Fee simple absolute.

H. Amount of original indebtedness, including subsequent advances made under Mortgage: $415,000.00.

I. Both the legal description of the mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty:

SEE EXHIBIT A HERETO

PIN's:  08-19-412-013-0000

Common Address:     2635 W. Cornelia, Waukegan, IL.

J. Statement as to defaults:

Mortgagor has not paid the monthly installments of principal, taxes, interest and insurance from June 1, 2008 to the present; the principal balance due on the Note and Mortgage is $388,479.73, plus accrued and accruing interest, costs, advances, fees and attorneys' fees; mortgagor has failed to pay real estate taxes on the mortgaged premises and the taxes for the tax year 2007 in the aggregate amount of $9,667.55 are delinquent.

K. Name of present owner of the real estate:  Chicago Title Land Trust Company, as successor Trustee under that certain Trust Agreement dated April 14, 1993 and known as Trust No. NS203891.

L. Names of other persons or entities who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated:

Jorge Torres, Juana Torres, Bank of Waukegan, now known as Norstates Bank, as Trustee under that certain Trust Agreement dated April 14, 1993 and known as Trust No. 203891, and Forever Construction, Inc.

M. Names of defendants claimed to be personally liable for deficiency, if any:     Jorge Torres and Juana Torres.

Please note that no personal deficiency will be sought against any party who has received a Chapter 7 discharge.

N. Capacity in which plaintiff brings this foreclosure:       Owner and holder of the indebtedness evidenced by the Note and secured by the Mortgage, or as servicing agent for such Owner and holder.

O. Facts in support of shortened redemption period:  Not sought.

P. Statement that the right of redemption has been waived by all owners of redemption, if applicable: Section 7.1(e) of the Mortgage waives the right of redemption.

Q. Facts in support of request for attorneys' fees and of costs and expenses, if applicable:  The Mortgage and the Note so provide.

3

R.  Facts in support of a request for appointment of mortgagee in possession or for appointment of a receiver, and identity of such receiver, if sought:     Section 5.3(a) of the Mortgage provides that upon default plaintiff has the right to have a receiver appointed.     Plaintiff prays for appointment of Donald Shapiro as receiver.

S.  Offer to mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the Mortgage without judicial sale, if sought:   Not sought; however, plaintiff alleges that it is not precluded from making or accepting such offer by the filing of the Complaint.

T.  Name or names of defendants whose rights to possess the mortgaged real estate, after the confirmation of a foreclosure sale, are sought to be terminated and, if not elsewhere stated, the facts in support thereof:

Jorge Torres, Juana Torres, Bank of Waukegan, now known as Norstates Bank, as Trustee under that certain Trust Agreement dated April 14, 1993 and known as Trust No. 203891, Chicago Title Land Trust Company, as successor Trustee under that certain Trust Agreement dated April 14, 1993 and known as Trust No. NS203891, and Forever Construction, Inc.

8.  Plaintiff avers that in addition to persons designated by name herein and the Unknown Defendants hereinabove referred to, there are other persons, and/or non-record claimants who are interested in this action and who have or claim some right, title, interest or lien in, to or upon the real estate, or some part thereof, in the Complaint described, including but not limited to the following:     None.

**WHEREFORE**, plaintiff prays for:

(i)  A judgment of foreclosure and sale;

(ii)  An order granting a shortened redemption period, if sought;

(iii)  A personal judgment for a deficiency, if applicable and sought, and only against parties who have not received a Chapter 7 bankruptcy discharge;

(iv)  An order granting possession, if sought;

(v)  An order placing the mortgagee in possession or appointing a receiver, if sought;

(vi)  A judgment for attorneys' fees, costs and expenses, if sought;

(vii) Such other and further relief as is allowed at law and in equity, and as this court may grant.

          /s/ John K. Kallman

John K. Kallman
plaintiff's attorney
221 North LaSalle Street
Suite 1200
Chicago, IL  60601
(312) 578-1515
ARDC No. 25182
jkkallman@sbcglobal.net

*62548079*

JUDGE GUZMAN
MAGISTRATE JUDGE VALDEZ
EDA

**RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:**

Washington Mutual Bank
National Commercial Operations Center
Attn: MFL Closing
P.O. Box 9011
Coppell, TX  75019

5383695

FILED FOR RECORD BY:
MARY ELLEN VANDERVENTER
LAKE COUNTY, IL RECORDER
09/29/2003  -  10:44:12 A.M.
RECEIPT #:     11701?
DRAWER #:   39

*ABOVE SPACE FOR RECORDER'S USE*

**BE ADVISED THAT THE PROMISSORY NOTE SECURED BY THIS
MORTGAGE MAY PROVIDE FOR ONE OR MORE OF THE
FOLLOWING: (1) A VARIABLE RATE OF INTEREST; (2) A BALLOON
PAYMENT AT MATURITY; (3) DEFERRAL OF A PORTION OF
ACCRUED INTEREST UNDER CERTAIN CIRCUMSTANCES WITH
INTEREST SO DEFERRED ADDED TO THE UNPAID PRINCIPAL
BALANCE OF THE NOTE AND SECURED HEREBY.**

**MORTGAGE, SECURITY AGREEMENT,
ASSIGNMENT OF LEASES AND RENTS,
AND FIXTURE FILING**

[Loan No. 625480791]

THIS MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND
RENTS, AND FIXTURE FILING ("Mortgage") is made this 19th day of September 2003
between Bank of Waukegan, as Trustee under the provisions of a Trust Agreement dated April 14,
1993 and known as Trust No. 203891, the address of which is 1601 N. Lewis Avenue, PO Box 39,
Waukegan, IL  60079 ("Mortgagor"); and WASHINGTON MUTUAL BANK, FA, a federal
association, the address of which is National Commercial Operations Center, P. O. Box 9178,
Coppell, TX  75019-9178, Attn: Portfolio Administration ("Mortgagee").

1.      **GRANTING CLAUSE.**  Mortgagor, in consideration of the acceptance of
Mortgagee of this instrument, and of other good and valuable consideration, the receipt and
sufficiency of which are hereby acknowledged, and in order to secure the obligations described
in Section 3 below, grants, bargains, sells, warrants, mortgages, assigns and conveys to
Mortgagee, and its successors and assigns, forever, with power of sale, all of Mortgagor's

Page 1 of 27

estate, right, title, interest, claim, and demand in and to the property in the county of Lake, state of Illinois. with a street address of 2635 West Cornelia Avenue, Waukegan, IL 60085, described as follows, whether now existing or hereafter acquired (all of the property described in all parts of this Section 1 and all additional property, if any, described in Section 2 is herein called the "Property"):

      1.1    **Land and Appurtenances**. The land described on Exhibit A hereto, and all tenements, hereditaments, rights-of-way, easements, appendages, and appurtenances thereto belonging or in any way appertaining, including without limitation all of the right, title and interest of Mortgagor in and to any avenues, streets, ways, alleys, vaults, strips, or gores of land adjoining that property, all rights to water, water stock, drains, drainage and air rights relating to that property, and all claims or demands of Mortgagor either in law or in equity in possession or expectancy of, in, and to that property; and

      1.2    **Improvements and Fixtures**.  All buildings, structures, and other improvements now or hereafter erected on the property described in 1.1 above, and all facilities, fixtures, machinery, apparatus, installations, goods, equipment, inventory, furniture, building materials and supplies and other properties of whatsoever nature, now or hereafter located in or used or procured for use in connection with that property, it being the intention of the parties that all property of the character hereinabove described that is now owned or hereafter acquired by Mortgagor and that is affixed or attached to, stored upon, or used in connection with the property described in 1.1 above shall be, remain, or become a portion of that property and shall be covered by and subject to the lien of this Mortgage, together with all contracts, agreements, permits, plans, specifications, drawings, surveys, engineering reports, and other work products relating to the construction of the existing or any future improvements on the Property, any and all rights of Mortgagor in, to, or under any architect's contracts or construction contracts relating to the construction of the existing or any future improvements on the Property, and any performance and/or payment bonds issued in connection therewith, together with all trademarks, trade names, copyrights, computer software, and other intellectual property used by Mortgagor in connection with the Property; and

      1.3    **Enforcement and Collection**.  Any and all rights of Mortgagor without limitation to make claim for, collect, receive, and receipt for any and all rents, income, revenues, issues, royalties, and profits, including mineral, oil, and gas rights and profits, insurance proceeds of any kind (whether or not Mortgagee requires such insurance and whether or not Mortgagee is named as an additional insured or loss payee of such insurance), condemnation awards, and other moneys, payable or receivable from or on account of any of the Property, including interest thereon, or to enforce all other provisions of any other agreement (including those described in Section 1.2 above) affecting or relating to any of the Property, to bring any suit in equity, action at law, or other proceeding for the collection of such moneys or for the specific or other enforcement of any such agreement, award, or judgment, in the name of Mortgagor or otherwise, and to do any and all things that Mortgagor

178921 v04.SE (3%2104!.DOC)

5383695    *2*

is or may be or become entitled to do with respect thereto, provided, however, that no obligation of Mortgagor under the provisions of any such agreements, awards, or judgments shall be impaired or diminished by virtue hereof, nor shall any such obligation be imposed upon Mortgagee; and

1.4  **Accounts and Income**.  Any and all rights of Mortgagor in any and all accounts, rights to payment, contract rights, chattel paper, documents, instruments, licenses, contracts, agreements, and general intangibles relating to any of the Property, including, without limitation, income and profits derived from the operation of any business on the Property or attributable to services that occur or are provided on the Property or generated from the use and operation of the Property; and

1.5  **Leases**.  All of Mortgagor's rights as landlord in and to all existing and future leases and tenancies, whether written or oral and whether for a definite term or month to month or otherwise, now or hereafter demising all or any portion of the property described in 1.1 and 1.2 above, including all renewals and extensions thereof and all rents, deposits, and other amounts received or receivable thereunder (collectively, the "Leases").  In accepting this Mortgage Mortgagee assumes no liability for the performance of any such Lease.

1.6  **Books and Records**.  All books and records of Mortgagor relating to the foregoing in any form.

2.    **SECURITY AGREEMENT**.  To the extent any of the property described in Section 1 is personal property, Mortgagor, as debtor, grants to Mortgagee, as secured party, a security interest therein together with a security interest in all other personal property of whatsoever nature that is located on, used, or to be used in connection with any of the property described in Section 1, and any products or proceeds of any thereof, pursuant to the Uniform Commercial Code of the state of Illinois (the "UCC"), on the terms and conditions contained herein. Mortgagor hereby authorizes Mortgagee to file any financing statement, fixture filing or similar filing to perfect the security interests granted in this Mortgage without Mortgagor's signature.

3.    **OBLIGATIONS SECURED**.  This Mortgage is given for the purpose of securing:

3.1  **Performance and Payment**.  The performance of the obligations contained herein and the payment of Four Hundred Fifteen Thousand and 00/100 dollars ($415,000.00) with interest thereon and all other amounts payable according to the terms of a promissory note of even date herewith made by Mortgagor, payable to Mortgagee or order, and having a maturity date of October 1, 2033, and any and all extensions, renewals, modifications, or replacements thereof, whether the same be in greater or lesser amounts (the "Note"), which Note may provide for one or more of the following:  (a) a variable rate of interest, (b) a balloon

5383695

payment at maturity or (c) deferral of a portion of accrued interest under certain circumstances with interest so deferred added to the unpaid principal balance of the Note and secured hereby; and

3.2    **Future Advances**.  The repayment of any and all sums advanced or expenditures made by Mortgagee subsequent to the execution of this Mortgage for the maintenance or preservation of the Property or advanced or expended by Mortgagee pursuant to any provision of this Mortgage subsequent to its execution, together with interest thereon. The total principal amount of the obligations secured hereby shall not exceed at any one time an amount equal to two hundred percent (200%) of the amount referred to in Section 3.1, plus interest.  Nothing contained in this section, however, shall be considered as limiting the interest which may be secured hereby or the amounts that shall be secured hereby when advanced to enforce or collect the indebtedness evidenced by the Note or to protect the real estate security and other collateral.

4.    **WARRANTIES AND COVENANTS OF MORTGAGOR**.    Mortgagor warrants, covenants, and agrees:

4.1    **Warranties**

(a)    Mortgagor has full power and authority to grant the Property to Mortgagee and warrants the Property to be free and clear of all liens, charges, and other monetary encumbrances except those appearing of record on the date hereof.

(b)    The Property is free from damage and no matter has come to Mortgagor's attention (including, but not limited to, knowledge of any construction defects or nonconforming work) that would materially impair the value of the Property as security.

(c)    The loan evidenced by the Note and secured by this Mortgage is primarily for commercial, industrial, or business purposes and is not primarily for personal, family, or household purposes.

4.2    **Preservation of Lien**.  Mortgagor will preserve and protect the priority of this Mortgage as a first lien on the Property.  If Mortgagor fails to do so, Mortgagee may take any and all steps necessary or appropriate to do so and all sums expended by Mortgagee in so doing shall be treated as part of the obligations secured by this Mortgage, shall be paid by Mortgagor upon demand by Mortgagee and shall bear interest at the highest rate borne by any of the obligations secured by this Mortgage.

4.3    **Repair and Maintenance of Property**.    Mortgagor will keep the Property in good condition and repair, which duty shall include but is not limited to continual cleaning, painting, landscaping, repairing, and refurbishing of the Property; will complete and

178921 v04.SE (3%2104!.DOC)

5383695

4'

not remove or demolish, alter, or make additions to any building or other improvement that is part of the Property, or construct any new structure on the Property, without the express written consent of Mortgagee; will underpin and support when necessary any such building or other improvement and protect and preserve the same; will complete or restore promptly and in good and workmanlike manner any such building or other improvement that may be damaged or destroyed and pay when due all claims for labor performed and materials furnished therefor; will not commit, suffer, or permit any act upon the Property in violation of law; and will do all other acts that from the character or use of the Property may be reasonably necessary for the continued operation of the Property in a safe and legal manner, the specific enumerations herein not excluding the general.

### 4.4    **Insurance**

4.4.1    **All Risk/Hazard.** Mortgagor will provide, maintain and deliver to Mortgagee, as further security for the faithful performance of this Mortgage, all risk insurance covering fire, casualty and such other hazards as may be specified by Mortgagee (including insurance against flood, if the Property is situated in a designated flood zone) in an amount equal to one hundred percent (100%) of the replacement cost of the Property and including a building upgrade and municipal ordinance endorsement. Such insurance policy or policies shall include rental or business interruption and extra expense coverage as more specifically described in Section 4.4.3 below. All policies of insurance on the Property, whether or not required by the terms of this Mortgage, shall name Mortgagee as first loss payee pursuant to a standard first-mortgage endorsement on Form 438BFU or on a loss-payee form substantially equivalent to the New York standard mortgage endorsement, with such deductibles as approved by Mortgagee but that are, in any event, not more than Ten Thousand Dollars ($10,000). Mortgagor shall be responsible for any uninsured losses and any deductibles. All existing and future policies for all insurance required by this Mortgage and all other insurance obtained by Mortgagor with respect to the Property, whether or not required by Mortgagee (including, but not limited to, earthquake insurance), and the proceeds of all of the foregoing, are hereby assigned to Mortgagee, but no such assignment shall be effective to invalidate or impair any insurance policy.

4.4.2    **Liability.** Mortgagor will maintain comprehensive general liability insurance covering the legal liability of Mortgagor against claims for bodily injury, personal injury, death, property damage or advertising injury occurring on, in, or about the Property with coverage of One Million Dollars ($1,000,000) combined single limit, and naming Mortgagee an additional insured.

4.4.3    **Rental Interruption.** Mortgagor will maintain rental or business interruption and extra expense insurance in an amount equal to at least twelve (12) months' gross rental income from the Property, and naming Mortgagee as first loss payee. The amount collected under any insurance coverage required to be maintained by Mortgagor pursuant to

178921 v04.SE (3%2104!.DOC)

5383695

this Section 4.4.3 may be applied by Mortgagee upon any indebtedness secured hereby and in such order as Mortgagee may determine, or at the option of Mortgagee, the entire amount so collected or any part thereof may be released to Mortgagor.

         4.4.4  **Insurance Survey**.  Mortgagor shall from time to time obtain such additional coverages or make such increases in the amounts of existing coverage as may reasonably be requested by Mortgagee.

         4.4.5  **General Provisions**.  All policies of insurance required to be maintained by Mortgagor pursuant to this Section 4.4 shall: (i) be primary and noncontributory with any other insurance Mortgagor may carry; (ii) be in form and substance and with companies acceptable to Mortgagee which are authorized to conduct business in the state in which the Property is located and which have a current rating of A-/X or better from the current Best Key Rating Guide; (iii) contain a Mortgagee endorsement acceptable to Mortgagee; and (iv) contain waivers of subrogation and of any co-insurance clauses.  Mortgagee reserves the right, in its reasonable discretion, to increase the amount of the required coverages, require insurance against additional risks, or withdraw approval of any insurance company at any time. Mortgagor shall deliver to Mortgagee an original of all policies of insurance and shall obtain renewals of any policies which expire and deliver evidence of such renewals to Mortgagee no later than ten (10) days prior to the expiration date of the policy being replaced.  All policies and renewals thereof shall contain provision for thirty (30) days' notice to Mortgagee prior to any cancellation thereof or material change thereto.  In the event of any loss covered by such policies, Mortgagor shall give immediate written notice to the insurance carrier and to Mortgagee.  Mortgagor hereby authorizes and empowers Mortgagee as attorney-in-fact for Mortgagor to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Mortgagee's expenses incurred in the collection of such proceeds; provided, however, that nothing contained in this Section 4.4.5 shall require Mortgagee to incur any expense or take any action hereunder.  Notwithstanding any of the foregoing, Mortgagee shall not be responsible for any such insurance or for the collection of any insurance moneys, or for any insolvency of any insurer or insurance underwriter.  Any and all unexpired insurance shall inure to the benefit of and pass to the purchaser of the Property at any sheriff's sale held hereunder.

         4.4.6  **Damage and Destruction**.

         (a)  **Mortgagor's Obligations**.  In the event of any damage to or loss or destruction of the Property, Mortgagor shall: (i) promptly notify Mortgagee of such event if the damage to or loss or destruction of the Property is of a value in excess of Twenty-Five Thousand Dollars ($25,000); (ii) take such steps as shall be necessary to preserve any undamaged portion of the Property; and (iii) unless otherwise instructed by Mortgagee shall, regardless of whether the insurance proceeds, if any, shall be sufficient for the purpose,

178921 v04.SE (3%2104!.DOC)

5383695



promptly commence and diligently pursue to completion the restoration, replacement and rebuilding (collectively, "Restoration") of the Property as nearly as possible to its value, condition and character immediately prior to such damage, loss or destruction and in accordance the plans and specifications approved, and with other provisions for the preservation of the security hereunder established, by Mortgagee, which approval shall not be unreasonably withheld or delayed.

(b) **Mortgagee's Rights: Application of Proceeds**. In the event that any portion of the Property is so damaged, destroyed or lost, and any such damage, destruction or loss is covered in whole or in part, by insurance described in subsection 4.4.1, whether or not such insurance is specifically required by the terms of this Mortgage, then the following provisions shall apply:

(i) If an Event of Default (as defined in Section 5.1) has occurred hereunder and is continuing: (A) Mortgagee may, but shall not be obligated to, make proof of loss to any insurer if not made promptly by Mortgagor, and Mortgagee is hereby authorized and empowered by Mortgagor to settle, adjust or compromise any claims for damage, destruction or loss thereunder unless the proposed amount of proceeds from such claims exceeds the then outstanding amount of the indebtedness secured hereby, and (B) each insurance company concerned is hereby authorized and directed to make payment therefor directly to Mortgagee, to be applied, at Mortgagee's option, to the indebtedness secured hereby in such order as Mortgagee may determine, in its sole discretion or to be held by Mortgagee for future application to the obligations secured hereby. Unless otherwise required by law, any application to the indebtedness secured hereby by Mortgagee of such payments shall not, by itself, cure or waive any Event of Default hereunder or notice of default under this Mortgage or invalidate any act done pursuant to such notice or waive any collateral encumbered hereby or otherwise securing the Note.

(ii) If no Event of Default hereunder has occurred and is continuing, and if the amount of proceeds from any claim for damage, destruction or loss is reasonably expected to be Twenty-Five Thousand Dollars ($25,000) or less, Mortgagor shall be entitled to receive all such proceeds and shall apply such proceeds to the Restoration of that portion of the Property so damaged, destroyed or lost to as nearly the same condition, character and value as may have existed prior to such damage, destruction or loss, with such changes or alterations as may be required to conform to applicable law.

(iii) If such proceeds are reasonably expected to exceed Twenty-Five Thousand Dollars ($25,000), and if an Event of Default has not occurred hereunder and is not continuing, Mortgagee shall apply all such insurance proceeds to the Restoration of the damaged portion of the Property, and such Restoration shall be accomplished as provided in this Section 4.4.6 so long as such Restoration can, in the reasonable judgment of Mortgagee, be completed (A) no later than two (2) years prior to the maturity date of the Note,

178921 v04.SE (3%2104!.DOC)

5383695

(B) within one (1) year after the date of the casualty, and (C) in such a manner so that the Property will have a value at least equal to its value prior to the casualty. Otherwise, Mortgagee may elect in its sole discretion to apply all such insurance proceeds to reduction of the indebtedness secured hereby.

(c)   **Disbursement of Insurance Proceeds**. Insurance proceeds held by Mortgagee for Restoration shall be disbursed from time to time as the Restoration progresses by Mortgagee (or at Mortgagee's election by a disbursing or escrow agent who shall be selected by Mortgagee and whose fees shall be paid by Mortgagor), upon delivery to Mortgagee of the following: (i) evidence reasonably satisfactory to Mortgagee of the estimated cost of Restoration; (ii) funds (or assurances reasonably satisfactory to Mortgagee that such funds are available) sufficient in addition to the proceeds of insurance to complete and fully pay for the Restoration; and (iii) such architect's certificates, waivers of lien, contractor's sworn statements, title insurance endorsements, plats of survey and such other evidences of cost, payment and performance as Mortgagee may reasonably require and approve. No payment made prior to the final completion of Restoration shall exceed ninety percent of the value of the work performed from time to time, as such value shall be determined by Mortgagee in its reasonable judgment. Prior to commencement of the work, and from time to time thereafter, if so requested by Mortgagee, Mortgagor shall deposit with Mortgagee an amount of funds in excess of the insurance proceeds which, together with such proceeds, shall at all times be at least sufficient in the reasonable judgment of Mortgagee to pay the entire unpaid cost of the Restoration, free and clear of all liens or claims of lien. Funds so deposited by Mortgagor shall be disbursed prior to the disbursement of any insurance proceeds. Any surplus which may remain out of insurance proceeds held by Mortgagee after payment of all costs of the Restoration shall be paid to Mortgagor. No interest shall be allowed to Mortgagor on account of any insurance proceeds or other funds held by Mortgagee, but Mortgagee agrees that, at Mortgagor's request, Mortgagee will deposit any proceeds of insurance held by it for Restoration into a blocked interest-bearing account with Mortgagee over which Mortgagee has sole possession, authority and control, in which Mortgagee has a perfected first-priority security interest to secure the indebtedness secured by this Mortgage, and otherwise on terms and conditions satisfactory to Mortgagee in its sole discretion. Notwithstanding the above, if an Event of Default occurs prior to full disbursement of the insurance proceeds and any other funds held by Mortgagee to be disbursed to Mortgagor any undisbursed portion of the insurance proceeds or other such funds may, at Mortgagee's option, be applied against the indebtedness secured by this Mortgage, whether or not then due, in such order and manner as Mortgagee shall select.

(d)   **Effect on the Indebtedness**. Any reduction in the indebtedness secured hereby resulting from the application to the indebtedness secured hereby of insurance proceeds pursuant to this subsection 4.4.6 shall be deemed to take effect only on the date of receipt by Mortgagee of such proceeds and application thereof to the indebtedness secured hereby; provided that, if, prior to the receipt by Mortgagee of such proceeds, the

178921 v04.SE (3%2104!.DOC)

5383695

Property shall have been sold in connection with a sheriff's sale under, or foreclosure of this Mortgage, or shall have been transferred by deed in lieu of foreclosure of this Mortgage, notwithstanding any limitation on Mortgagor's liability contained herein or in the Note, Mortgagee shall have the right to receive the same to the extent of any deficiency following such sale or conveyance, together with attorneys' fees and disbursements incurred by Mortgagee in connection with the collection thereof.

4.4.7  **Failure to Obtain Required Insurance**.  Should Mortgagor at any time fail to provide Mortgagee with evidence of the insurance coverage as required by this instrument, Mortgagee may purchase such insurance coverage at Mortgagor's expense in order to protect Mortgagee's interest in the Property.  Such insurance may, but need not, protect Mortgagor's interests.  The insurance coverage that Mortgagee purchases on behalf of Mortgagor may not pay any claim that Mortgagor makes or any claim that is made against Mortgagor in connection with the Property.  Mortgagor may later cancel any insurance coverage purchased by Mortgagee, but only after providing Mortgagee with evidence that insurance coverage has been obtained as required pursuant to this instrument.  Should Mortgagee purchase all or any portion of the insurance required hereunder, Mortgagor shall be responsible for all costs and expenses of such insurance coverage, including, but not limited to, interest and any other charges imposed by Mortgagee in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance coverage. The costs and expenses of any insurance coverage purchased by Mortgagee shall be added to, and shall be a part of, the obligations secured hereby.  Mortgagor acknowledges that the costs and expenses of the insurance coverage purchased by Mortgagee hereunder may be greater in amount than the cost of insurance Mortgagor may be able to obtain on its own.

4.5  **Right of Inspection**.  Mortgagor shall permit Mortgagee or its agents or independent contractors (including, but not limited to, appraisers, environmental consultants and construction consultants), at all reasonable times, to enter upon and inspect the Property.

4.6  **Compliance with Laws, Etc.; Preservation of Licenses**.

4.6.1  Mortgagor shall comply in all material respects with (a) all laws, statutes, ordinances, rules, regulations, licenses, permits, approvals, orders, judgments and other requirements of governmental authorities relating to the Property or Mortgagor's use thereof, and (b) all easements, licenses and agreements relating to the Property or Mortgagor's use thereof.

4.6.2  Mortgagor shall observe and comply with all requirements necessary to the continued existence and validity of all rights, licenses, permits, privileges, franchises, and concessions relating to any existing or presently contemplated use of the Property, including but not limited to any zoning variances, special exceptions, and nonconforming use permits.

178921 v04.SE (3%2104!.DOC)

5383695

9

4.7     **Further Assurances**. Mortgagor will, at its expense, from time to time execute and deliver any and all such instruments of further assurance and other instruments and do any and all such acts, or cause the same to be done, as Mortgagee deems necessary or advisable to mortgage and convey to Mortgagee the Property or to carry out more effectively the purposes of this Mortgage.

4.8     **Legal Actions**. Mortgagor will appear in and defend any action or proceeding before any court or administrative body purporting to affect the security hereof or the rights or powers of Mortgagee; and will pay all costs and expenses, including cost of evidence of title, title insurance premiums, and any fees of attorneys, appraisers, environmental inspectors, and others, incurred by Mortgagee, in a reasonable sum, in any such action or proceeding in which Mortgagee may appear and in any suit brought by Mortgagee to foreclose this Mortgage and in any nonjudicial foreclosure of this Mortgage.

4.9     **Taxes, Assessments, and Other Liens**. Mortgagor will pay not later than when due all taxes, assessments, encumbrances, charges, and liens with interest, on the Property or any part thereof, which at any time appear to be or are alleged to be prior and superior hereto, including but not limited to any tax on or measured by rents of the Property, the Note, this Mortgage, or any obligation or part thereof secured hereby.

4.10    **Expenses**. Mortgagor will pay all costs, fees, and expenses reasonably incurred by Mortgagee in connection with this Mortgage.

4.11    **Repayment of Expenditures**. Mortgagor will pay within five (5) days after written demand all amounts secured by this Mortgage, other than principal of and interest on the Note, with interest from date of expenditure at the default rate of interest specified in the Note (the "Default Rate") and the repayment thereof shall be secured hereby.

4.12    **Financial and Operating Information**. Mortgagor will, within ninety (90) days of the close of Mortgagor's fiscal year, furnish to Mortgagee in such form as it may request, financial statements and balance sheets of Mortgagor and the entities and individuals who are liable for repayment of the Note, and itemized annual statements of income and expense in connection with the operation of the Property, including but not limited to utilization and property inspection reports, and such other financial and operating statements of Mortgagor as Mortgagee may from time to time require and such operating statements, occupancy reports, variance reports, and financial information for the Property as Mortgagee may from time to time require.

If Mortgagor defaults in its obligation to provide Mortgagee with any of the financial and operating information required to be provided under this subsection 4.12 within the time periods required under this subsection 4.12 and such default continues after Mortgagee has provided

178921 v04.SE (3%2104!.DOC)

5383695     10

Mortgagor with thirty (30) days' notice and opportunity to cure such default, Mortgagor shall pay to Mortgagee, as liquidated damages for the extra expense in servicing the loan secured hereby, Five Hundred Dollars ($500) on the first day of the month following the expiration of such thirty (30)-day period and One Hundred Dollars ($100) on the first day of each month thereafter until such default is cured. All such amounts shall be secured by this Mortgage.

   4.13 **Sale, Transfer, or Encumbrance of Property**. Mortgagor shall not, without the prior written consent of Mortgagee, further encumber the Property or any interest therein, cause or permit any change in the entity, ownership, or control of Mortgagor or agree to do any of the foregoing without first repaying in full the Note and all other sums secured hereby.

   Mortgagor shall not, without the prior written consent of Mortgagee (which consent shall be subject to the conditions set forth below), sell, transfer, or otherwise convey the Property or any interest therein, voluntarily or involuntarily, or agree to do any of the foregoing without first repaying in full the Note and all other sums secured hereby.

   Mortgagee will not unreasonably withhold its consent to a sale, transfer, or other conveyance of the Property, provided however, that:

     (a) Mortgagor shall provide to Mortgagee a loan application on such form as Mortgagee may require executed by the proposed transferee and accompanied by such other documents as Mortgagee may require in connection therewith;

     (b) Mortgagee may consider the factors normally used in the process of determining whether or not to loan funds including but not limited to (i) the ratio of the remaining principal amount of the Note to the value of the Property, (ii) the ratio of the debt service requirements of the obligations secured by the Property to the income generated by the Property, and (iii) such other factors as Mortgagee may consider relevant;

     (c) Mortgagee may specifically evaluate the financial responsibility, structure and real estate operations experience of any potential transferee;

     (d) Mortgagee may require that it be provided at Mortgagor's expense, with an appraisal of the Property and an on-site inspection of the Property by an appraiser and an inspector satisfactory to Mortgagee, and may require that Mortgagor or the transferee of the Property correct any items of deferred maintenance that may be identified by Mortgagee;

     (e) Mortgagee may, as a condition to granting its consent to a sale, transfer, or other conveyance of the Property, require in its sole discretion:

178921 v04.SE (3%2104!.DOC)

5383695

11

(i)     the payment by Mortgagor of a fee (the "Consented Transfer Fee") of one percent (1%) of the unpaid principal balance of the Note;

(ii)    that the unpaid principal balance of the Note be reduced to an amount not to exceed a percentage of the sales price of the Property equal to Mortgagee's then current underwriting requirements for loan-to-value ratios for properties similar to the Property;

(iii)   that the Note Rate (as defined in the Note) be increased so that, at all times after such sale, transfer or other conveyance, the Note bears interest at a rate of up to five percentage points (5%) per annum higher than would otherwise be the case and notwithstanding any otherwise applicable limitation on the Note Rate, or on adjustments in the Note Rate, set forth in the Note; and

(f)     No Event of Default (as defined below), or event or condition which with the giving of notice or the passage of time would be an Event of Default if not cured, has occurred and is continuing.

In connection with any sale, transfer or other conveyance of the Property to which Mortgagee is asked to consent, Mortgagor agrees to pay to Mortgagee, in addition to any sums specified above, for Mortgagee's expenses incurred in reviewing and evaluating such matter, the following amounts:  (i) Seven Hundred Fifty Dollars ($750), which amount shall be paid by Mortgagor to Mortgagee upon Mortgagor's request for Mortgagee's consent and shall be applied to the Consented Transfer Fee if Mortgagee's consent is given to such sale, transfer, or other conveyance of the Property; and (ii) Mortgagee's reasonable attorneys' fees and other reasonable out-of-pocket expenses incurred in connection with such request for consent and in connection with such sale, transfer or other conveyance.  In addition, prior to or at the time of any sale, transfer or other conveyance to which Mortgagee grants its consent, Mortgagor shall obtain and provide to Mortgagee a fully and duly executed and acknowledged assumption agreement in form and substance satisfactory to Mortgagee under which the transferee of the Property assumes liability for the loan evidenced by the Note and secured by this Mortgage together with such financing statements and other documents as Mortgagee may require.  Mortgagor and any guarantors of such loan shall continue to be obligated for repayment of such loan unless and until Mortgagee has entered into a written assumption agreement specifically releasing them from such liability.

Consent to any one such occurrence shall not be deemed a waiver of the right to require consent to any future occurrences.

In each instance in which a sale, transfer or other conveyance of the Property, or any change in the entity, ownership, or control of Mortgagor, occurs without Mortgagee's prior written consent thereto having been given, and regardless of whether Mortgagee elects to

Page 12 of 27

5383695    12

accelerate the maturity date of the Note (any of the foregoing events is referred to as an "Unconsented Transfer"), Mortgagor and its successors shall be jointly and severally liable to Mortgagee for the payment of a fee (the "Unconsented Transfer Fee") of two percent (2.0%) of the unpaid principal balance of the Note as of the date of such Unconsented Transfer. In addition, the Note Rate shall be increased as provided in subsection (e)(iii) above effective as of the date of such Unconsented Transfer. The Unconsented Transfer Fee, together with all interest accrued pursuant to the immediately foregoing sentence and not previously paid, shall be due and payable thirty (30) days after written demand therefor by Mortgagee, and shall be secured by this Mortgage; provided, however, that payment of such amounts shall not cure any Event of Default resulting from the Unconsented Transfer.

Mortgagee's waiver of any of the Consented Transfer Fee, the Unconsented Transfer Fee or any other amount payable hereunder, in whole or in part for any one sale, transfer or other conveyance shall not preclude the imposition thereof in connection with any other sale, transfer or other conveyance.

Notwithstanding the foregoing and notwithstanding Section 4.15, Mortgagee's consent will not be required, and neither the Consented Transfer Fee nor the Unconsented Transfer Fee will be imposed, for the transfer of not more than twenty-five percent (25%) in the aggregate during the term of the Note of partnership interests in Mortgagor, if Mortgagor is a partnership, or of member interests in Mortgagor, if Mortgagor is a limited liability company, or of shares of stock of Mortgagor, if Mortgagor is a corporation, provided that none of the persons or entities liable for the repayment of the Note is released from such liability.

4.14    **Information for Participants, Etc**. Mortgagor agrees to furnish such information and confirmation as may be required from time to time by Mortgagee on request of potential loan participants and assignees and agrees to make adjustments in this Mortgage, the Note, and the other documents evidencing or securing the loan secured hereby to accommodate such participant's or assignee's requirements, provided that such requirements do not vary the economic terms of the loan secured hereby. Mortgagor hereby authorizes Mortgagee to disclose to potential participants and assignees any information in Mortgagee's possession with respect to Mortgagor and the loan secured hereby.

4.15    **Mortgagor Existence**. If Mortgagor is a corporation, partnership, limited liability company or other entity, Mortgagee is making this loan in reliance on Mortgagor's continued existence, ownership and control in its present form. Mortgagor will not alter its name, jurisdiction of organization, structure, ownership or control without the prior written consent of Mortgagee and will do all things necessary to preserve and maintain said existence and to ensure its continuous right to carry on its business. If Mortgagor is a partnership, Mortgagor will not permit the addition, removal or withdrawal of any general partner without the prior written consent of Mortgagee. The withdrawal or expulsion of any

178921 v04.SE (3%2104!.DOC)

5383695    13

general partner from Mortgagor partnership shall not in any way affect the liability of the withdrawing or expelled general partner hereunder or on the Note.

      4.16   **Tax and Insurance Reserves**. In addition to the payments required by the Note, Mortgagor agrees to pay Mortgagee, at Mortgagee's request, such sums as Mortgagee may from time to time estimate will be required to pay, at least thirty (30) days before due, the next due taxes, assessments, insurance premiums, and similar charges affecting the Property, less all sums already paid therefor divided by the number of months to elapse before one month prior to the date when such taxes, assessments, and premiums will become delinquent, such sums to be held by Mortgagee without interest or other income to Mortgagor to pay such taxes, assessments and premiums. Should this estimate as to taxes, assessments, and premiums prove insufficient, Mortgagor upon demand agrees to pay Mortgagee such additional sums as may be required to pay them before delinquent.

If the total of the above-described payments in any one year shall exceed the amounts actually paid by Mortgagee for taxes, assessments, and premiums, such excess may be credited by Mortgagee on subsequent payments under this section. If there shall be a default hereunder for which Mortgagee elects to realize upon this Mortgage, then at any time after default and prior to the sheriff's sale, Mortgagee may apply any balance of funds it may hold pursuant to this Section 4.16 to any amount secured by this Mortgage and in such order as Mortgagee may elect. If Mortgagee does not so apply such funds at or prior to the sheriff's sale, the purchaser at such sale shall be entitled to all such funds. If Mortgagee acquires the Property in lieu of realizing on this Mortgage, the balance of funds it holds shall become the property of Mortgagee.

Any transfer in fee of all or a part of the Property shall automatically transfer to the grantee all or a proportionate part of Mortgagor's rights and interest in the fund accumulated hereunder.

      4.17   **Leases**

           (a)    Mortgagor shall not receive or collect any rents from any present or future tenant of the Property or any part thereof in advance in excess of one (1) month's rent or collect a security deposit in excess of two (2) months' rent.

           (b)    Mortgagor shall promptly deposit and maintain all security deposits or other deposits received by Mortgagor from tenants in a segregated trust account in a federally insured bank or savings and loan association and shall notify and direct in writing each and every present or future tenant or occupant of the Property or any part thereof that any security deposit or other deposit heretofore delivered to Mortgagor has been retained by Mortgagor or assigned and delivered to Mortgagee as the case may be.

      5.   **DEFAULT.**

178921 v04.SE (3%2104!.DOC)

5383695

5.1    **Definition**.  Any of the following shall constitute an "Event of Default" as that term is hereinafter used:

(a)    Any representation or warranty made by or for the benefit of Mortgagor herein or elsewhere in connection with the loan secured hereby, including but not limited to any representations in connection with the security therefor, shall prove to have been incorrect or misleading in any material respect;

(b)    Mortgagor or any other person or entity liable therefor shall fail to pay when due any indebtedness secured hereby;

(c)    Mortgagor or any other signatory thereto shall default in the performance of any covenant or agreement contained in this Mortgage, the Note, or any other agreement securing, or executed in connection with, the indebtedness secured hereby;

(d)    Mortgagor or any other person or entity liable for the repayment of the indebtedness secured hereby shall become unable or admit in writing its inability to pay its debts as they mature, or file, or have filed against it, a voluntary or involuntary petition in bankruptcy, or make a general assignment for the benefit of creditors, or become the subject of any other receivership or insolvency proceeding;

(e)    Mortgagor or any other signatory thereto shall default in the performance of any covenant or agreement contained in any mortgage encumbering the Property, or the note or any other agreement evidencing or securing the indebtedness evidenced thereby;

(f)    A tax, charge, or lien shall be placed upon or measured by the Note, this Mortgage, or any obligation secured hereby that Mortgagor does not or may not legally pay in addition to the payment of all principal and interest as provided in the Note; or

(g)    There shall occur any default under any certificate and indemnity agreement regarding hazardous substances executed by Mortgagor in favor of Mortgagee.

5.2    **Mortgagee's Right to Perform**.  Upon the occurrence of any Event of Default, Mortgagee, but without the obligation so to do and without notice to or demand upon Mortgagor and without releasing Mortgagor from any obligations hereunder, may:  make any payments or do any acts required of Mortgagor hereunder in such manner and to such extent as either may deem necessary to protect the security hereof, Mortgagee being authorized to enter upon the Property for such purposes; commence, appear in, and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Mortgagee; pay, purchase, contest, or compromise any encumbrance, charge, or lien in accordance with the

178921 v04.SE (3%2104!.DOC)

5383695    15

following paragraph; and in exercising any such powers, pay necessary expenses, employ counsel, and pay a reasonable fee therefor.  All sums so expended shall be payable on demand by Mortgagor, be secured hereby and bear interest at the Default Rate of interest specified in the Note from the date advanced or expended until repaid.

Mortgagee, in making any payment herein, is hereby authorized, in the place and stead of Mortgagor, in the case of a payment of taxes, assessments, water rates, sewer rentals, and other governmental or municipal charges, fines, impositions, or liens asserted against the Property, to make such payment in reliance on any bill, statement, or estimate procured from the appropriate public office without inquiry into the accuracy of the bill, statement, or estimate or into the validity of any tax, assessment, sale, forfeiture, tax lien, or title or claim thereof; in the case of any apparent or threatened adverse claim of title, lien, statement of lien, encumbrance, Mortgage, claim, or charge Mortgagee shall be the sole judge of the legality or validity of same; and in the case of a payment for any other purpose herein and hereby authorized, but not enumerated in this paragraph, such payment may be made whenever, in the sole judgment and discretion of Mortgagee, such advance or advances shall seem necessary or desirable to protect the full security intended to be created by this instrument, provided further, that in connection with any such advance, Mortgagee at its option may and is hereby authorized to obtain a continuation report of title prepared by a title insurance company, the cost and expenses of which shall be repayable by Mortgagor without demand and shall be secured hereby.

5.3  **Remedies on Default**.  Upon the occurrence of any Event of Default all sums secured hereby shall become immediately due and payable, without notice or demand, at the option of Mortgagee and Mortgagee may:

(a)  Have a receiver appointed as a matter of right on an ex parte basis without notice to Mortgagor and without regard to the sufficiency of the Property or any other security for the indebtedness secured hereby and, without the necessity of posting any bond or other security, such receiver shall take possession and control of the Property and shall collect and receive all of the rents, issues, and profits thereof;

(b)  Foreclose this Mortgage as a mortgage or otherwise realize upon the Property;

(c)  Exercise any power of sale permitted pursuant to applicable law; or

(d)  Sue on the Note as permitted under applicable law.

5.4  **No Waiver**.  By accepting payment of any sum secured hereby after its due date, Mortgagee does not waive its right either to require prompt payment when due of all other sums so secured or to declare an Event of Default for failure to do so.

178921 v04.SE (3%2104!.DOC)

5383695

16

5.5    **Waiver of Marshaling, Etc**. In connection with any sheriff's sale or other foreclosure sale under this Mortgage, Mortgagor hereby waives, for itself and all others claiming by, through or under Mortgagor, any right Mortgagor or such others would otherwise have to require marshaling or to require that the Property be sold in parcels or in any particular order.

5.6    **Remedies Cumulative**. The rights and remedies accorded by this Mortgage shall be in addition to, and not in substitution of, any rights or remedies available under now existing or hereafter arising applicable law. All rights and remedies provided for in this Mortgage or afforded by law or equity are distinct and cumulative and may be exercised concurrently, independently or successively. The failure on the part of Mortgagee to promptly enforce any right hereunder shall not operate as a waiver of such right and the waiver of any default shall not constitute a waiver of any subsequent or other default. Mortgagee shall be subrogated to the claims and liens of those whose claims or liens are discharged or paid with the loan proceeds hereof.

6.    **CONDEMNATION**. Any award of damages, whether paid as a result of judgment or prior settlement, in connection with any condemnation or other taking of any portion of the Property, for public or private use, or for injury to any portion of the Property is hereby assigned and shall be paid to Mortgagee which may apply such moneys received by it in the same manner and with the same effect as provided in Section 4.4.6 above for disposition of proceeds of hazard insurance, provided that if the taking results in a loss of the Property to an extent which, in the reasonable opinion of Mortgagee, renders or will render the Property not economically viable or which substantially impairs Mortgagee's security or lessens to any extent the value, marketability or intended use of the Property, Mortgagee may apply the condemnation proceeds to reduce the unpaid indebtedness secured hereby in such order as Mortgagee may determine, and without any adjustment in the amount of installments due under the Note. If so applied, any proceeds in excess of the unpaid balance of the Note and other sums due to Mortgagee shall be paid to Mortgagor or Mortgagor's assignee. Mortgagee shall in no case be obligated to see to the proper application of any amount paid over to Mortgagor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice. Should the Property or any part or appurtenance thereof or right or interest therein be taken or threatened to be taken by reason of any public or private improvement, condemnation proceeding (including change of grade), or in any other manner, Mortgagee may, at its option, commence, appear in and prosecute, in its own name, any action or proceeding, or make any reasonable compromise or settlement in connection with such taking or damage, and obtain all compensation, awards or other relief therefor, and Mortgagor agrees to pay Mortgagee's costs and reasonable attorneys' fees incurred in connection therewith. No condemnation award at any time assigned to or held by Mortgagee shall be deemed to be held in trust, and Mortgagee may commingle such award with its general assets and shall not be liable for the payment of any interest thereon.

178921 v04.SE (3%2104!.DOC)

5383695        17

7.    **SPECIAL ILLINOIS PROVISIONS**

7.1    <u>**Illinois Mortgage Foreclosure Law**</u>.  It is the intention of Mortgagor and Mortgagee that the enforcement of the terms and provisions of this Mortgage shall be accomplished in accordance with the Illinois Mortgage Foreclosure Law (the "Act"), Illinois Compiled Statutes, 735 ILCS 5/15-1101 *et seq.* and with respect to such Act, Mortgagor agrees and covenants that:

(a)    Mortgagor and Mortgagee shall have the benefit of all of the provisions of the Act, including all amendments thereto which may become effective from time to time after the date hereof.  In the event any provision of the Act which is specifically referred to herein may be repealed, Mortgagee shall have the benefit of such provision as most recently existing prior to such repeal, as though the same were incorporated herein by express reference;

(b)    Wherever provision is made in this Mortgage for insurance policies to bear mortgage clauses or other loss payable clauses or endorsements in favor of Mortgagee, or to confer authority upon Mortgagee to settle or participate in the settlement of losses under policies of insurance or to hold and disburse or otherwise control use of insurance proceeds, from and after the entry of judgment of foreclosure, all such rights and powers of Mortgagee shall continue in Mortgagee as judgment creditor or Mortgagee until confirmation of sale;

(c)    All advances, disbursements and expenditures made or incurred by Mortgagee before and during a foreclosure, and before and after judgment of foreclosure, and at any time prior to sale, and, where applicable, after sale, and during the pendency of any related proceedings, for the following purposes, in addition to those otherwise authorized by the Mortgage, or by the Act (collectively "Protective Advances"), shall have the benefit of all applicable provisions of the Act, including those provisions of the Act hereinbelow referred to:

(i)    all advances by Mortgagee in accordance with the terms of the Mortgage to: (1) preserve, maintain, repair, restore or rebuild the improvements upon the Mortgaged Property; (2) preserve the lien of the Mortgage or the priority thereof; or (3) enforce the Mortgage, as referred to in Subsection (b)(5) of Section 5/15-1302 of the Act;

(ii)    payments by Mortgagee of (1) principal, interest or other obligations in accordance with the terms of any senior mortgage or other prior lien or encumbrance; (2) real estate taxes and assessments, general and special and all other taxes and assessments of any kind or nature whatsoever which are assessed or imposed upon the Property or any part thereof; (3) other obligations authorized by the Mortgage; or (4) with court

178921 v04.SE (3%2104!.DOC)

5383695    

approval, any other amounts in connection with other liens, encumbrances or interests reasonably necessary to preserve the status of title, as referred to in Section 5/15-1505 of the Act;

(iii)    advances by Mortgagee in settlement or compromise of any claims asserted by claimants under senior mortgages or any other prior liens;

(iv)    attorneys' fees and other costs incurred: (1) in connection with the foreclosure of the Mortgage as referred to in Section 5/15-1504(d)(2) and 5/15-1510 of the Act; (2) in connection with any action, suit or proceeding brought by or against Mortgagee for the enforcement of the Mortgage or arising from the interest of Mortgagee hereunder; or (3) in preparation for or in connection with the commencement, prosecution or defense of any other action related to the Mortgage or the Property;

(v)    Mortgagee's fees and costs, including attorneys' fees, arising between the entry of judgment of foreclosure and the confirmation hearing as referred to in Section 5/15-1508(b)(1) of the Act;

(vi)    expenses deductible from proceeds of sale as referred to in Section 5/15-1512(a) and (b) of the Act;

(vii)    expenses incurred and expenditures made by Mortgagee for any one or more of the following: (1) if the Property or any portion thereof constitutes one or more units under a condominium declaration, assessments imposed upon the unit owner thereof; (2) if Mortgagor's interest in the Property is a leasehold estate under a lease or sublease, rentals or other payments required to be made by the lessee under the terms of the lease or sublease; (3) premiums for casualty and liability insurance paid by Mortgagee whether or not Mortgagee or a receiver is in possession, if reasonably required, in reasonable amounts, and all renewals thereof, without regard to the limitation to maintenance of existing insurance in effect at the time any receiver or Mortgagee takes possession of the Property imposed by Section 5/15-1704(c)(1) of the Act; (4) repair or restoration of damage or destruction in excess of available insurance proceeds or condemnation awards; (5) payments deemed by Mortgagee to be required for the benefit of the Property or required to be made by the owner of the Property under any grant or declaration of easement, easement agreement, agreement with any adjoining land owners or instruments creating covenants or restrictions for the benefit of or affecting the Property; (6) shared or common expense assessments payable to any association or corporation in which the owner of the Property is a member in any way affecting the Property; (7) if the loan secured hereby is a construction loan, costs incurred by Mortgagee for demolition, preparation for and completion of construction, as may be authorized by the applicable commitment, loan agreement or other agreement; (8) payments required to be paid by Mortgagor or Mortgagee pursuant to any lease or other agreement for occupancy of the

178921 v04.SE (3%21041.DOC)

5383695

19

Property and (9) if the Mortgage is insured, payment of FHA or private mortgage insurance *required to keep such insurance in force.*

All Protective Advances shall be so much additional indebtedness secured by this Mortgage, and shall become immediately due and payable without notice and with interest thereon from the date of the advance until paid at the rate of interest payable after default under the terms of the Note.

This Mortgage shall be a lien for all Protective Advances as to subsequent purchasers and judgment creditors from the time this Mortgage is recorded pursuant to Subsection (b)(5) of Section 5/15-1302 of the Act.

All Protective Advances shall, except to the extent, if any, that any of the same is clearly contrary to or inconsistent with the provisions of the Act, apply to and be included in:

(A)    any determination of the amount of indebtedness secured by this Mortgage at any time;

(B)    the indebtedness found due and owing to Mortgagee in the judgment of foreclosure and any subsequent supplemental judgments, orders, adjudications or findings by the court of any additional indebtedness becoming due after such entry of judgment, it being agreed that in any foreclosure judgment, the court may reserve jurisdiction for such purpose;

(C)    if right of redemption has not been waived by this Mortgage, computation of amounts required to redeem pursuant to Sections 5/15-1603(d) and 5/15-1603(e) of the Act;

(D)    determination of amounts deductible from sale proceeds pursuant to Section 5/15-1512 of the Act;

(E)    application of income in the hands of any receiver or Mortgagee in possession; and

(F)    computation of any deficiency judgment pursuant to Section 5/15-1508(b)(2), 5/15-1508(e) and 5/15-1511 of the Act;

(d)    In addition to any provision of this Mortgage authorizing Mortgagee to take or be placed in possession of the Property, or for the appointment of a receiver, Mortgagee shall have the right, in accordance with Section 5/15-1701 and 5/15-1702 of the Act, to be placed in possession of the Property or at its request to have a receiver appointed, and such receiver, or Mortgagee, if and when placed in possession, shall have, in

178921 v04.SE (3%2104!.DOC)

5383695

20

addition to any other powers provided in this Mortgage, all rights, powers, immunities, and duties as provided for in Sections 5/15-1701 and 5/15-1703 of the Act; and

(e)    Mortgagor acknowledges that the Property does not constitute agricultural real estate, as said term is defined in Section 5/15-1201 of the Act or residential real estate as defined in Section 5/15-1219 of the Act. Pursuant to Section 5/15-1601(b) of the Act, Mortgagor hereby waives any and all right of redemption from the sale under any order or judgment of foreclosure of this Mortgage or under any sale or statement or order, decree or judgment of any court relating to this Mortgage, on behalf of itself and each and every person acquiring any interest in or title to any portion of the Property, it being the intent hereof that any and all such rights of redemption of Mortgagor and of all such other persons are and shall be deemed to be hereby waived to the maximum extent and with the maximum effect permitted by the laws of the State of Illinois.

7.2    **UCC Remedies**.  Mortgagee shall have the right to exercise any and all rights of a secured party under the Illinois Uniform Commercial Code (the "UCC"), Illinois Compiled Statutes, 810 ILCS 5/1 *et seq.* with respect to all or any part of the Property which may be personal property.  Whenever notice is permitted or required hereunder or under the UCC, ten (10) days notice shall be deemed reasonable.  Mortgagee may postpone any sale under the UCC from time to time, and Mortgagor agrees that Mortgagee shall have the right to be a purchaser at any such sale.

7.3    **Future Advances; Revolving Credit**.  To the extent, if any, that Mortgagee is obligated to make future advances of loan proceeds to or for the benefit of Mortgagor, Mortgagor acknowledges and intends that all such advances, including future advances whenever hereafter made, shall be a lien from the time this Mortgage is recorded, as provided in Section 5/15-1302(b)(1) of the Act, and Mortgagor acknowledges that such future advances constitute revolving credit indebtedness secured by a mortgage on real property pursuant to the terms and conditions of 205 ILCS 5/5d.  Mortgagor covenants and agrees that this Mortgage shall secure the payment of all loans and advances made pursuant to the terms and provisions of the Note and this Mortgage, whether such loans and advances are made as of the date hereof or at any time in the future, and whether such future advances are obligatory or are to be made at the option of Mortgagee or otherwise (but not advances or loans made more than 20 years after the date hereof), to the same extent as if such future advances were made on the date of the execution of this Mortgage and although there may be no advances made at the time of the execution of this Mortgage and although there may be no other indebtedness outstanding at the time any advance is made.  The lien of this Mortgage shall be valid as to all Indebtedness, including future advances, from the time of its filing of record in the office of the Recorder of Deeds of the County in which the Property is located.  The total amount of the indebtedness may increase or decrease from time to time.  This Mortgage shall be valid and shall have priority over all subsequent liens and encumbrances, including statutory liens except

178921 v04.SE (3%2104!.DOC)

5383695

21

taxes and assessments levied on the Property, to the extent of the maximum amount secured hereby.

7.4    **Illinois Responsible Property Transfer Act**.  Mortgagor represents and warrants that, with respect to the Property, any portion of which falls within the categories of real property covered by the Illinois Responsible Property Transfer Act, Illinois Compiled Statutes, 765 ILCS 90/1 *et seq*., Mortgagor has prepared and delivered all disclosure documents required pursuant to such statute, and that, to the best of Mortgagor's knowledge and belief, all information contained in such disclosure documents is true and complete.  Mortgagor shall protect, indemnify and hold Mortgagee and Mortgagee's directors, officers, employees, agents, successors and assigns harmless from and against any and all loss, damage, cost, expense, liability and penalty (including, without limitation, reasonable attorneys' fees and costs) directly or indirectly arising out of or attributable to any violation of the statutory disclosure filing or other requirements of said statute.  This indemnity shall survive the satisfaction, release or extinguishment of the lien of this Mortgage, including, without limitation, any extinguishment of the lien of this Mortgage by foreclosure or by deed in lieu thereof.

7.5    **Business Loan**.  The proceeds of the indebtedness evidenced by the note shall be used solely for business purposes and in furtherance of the regular business affairs of Mortgagor, and the entire principal obligation secured hereby constitutes (a) a "business loan" as that term is defined in, and for all purposes of, 815 ILCS 205/4(1)(c), and (B) a "loan secured by a mortgage on real estate" within the purview and operation of 815 ILCS 205/4(l)(1).

8.    **APPLICATION OF RENTS.**  Mortgagor hereby gives to and confers upon Mortgagee the right, power, and authority during the continuance of this Mortgage to collect the rents, issues, and profits of the Property, reserving unto Mortgagor the right, so long as no Event of Default exists, to collect and retain such rents, issues, and profits as they become due and payable.  Upon any such default, Mortgagor's right to spend or retain any rents, issues, or profits of the Property shall cease immediately and without notice or demand and Mortgagee may at any time and without notice, either in person, by agent, or by a receiver to be appointed by a court, without regard to the adequacy of any security for the indebtedness hereby secured and without the necessity for posting any bond or other security, enter upon and take possession of the Property or any part thereof, or in its own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby, and in such order as Mortgagee may determine.  The entering upon and taking possession of the Property, the collection of such rents, issues, and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

178921 v04.SE (3%2104!.DOC)

5383695

22

9.    **NOTICES.**

9.1    **Notices**.  Any notice to or demand upon Mortgagor (including any notice of default or notice of sale) or notice to or demand upon Mortgagee shall be deemed to have been sufficiently made for all purposes when deposited in the United States mails, postage prepaid, registered or certified, return receipt requested, addressed to Mortgagor at its address set forth above or to Mortgagee at the following address:

> Washington Mutual Bank, FA
> National Commercial Operations Center
> P. O. Box 9178
> Coppell, TX  75019-9178
> Attention:  Portfolio Administration

or to such other address as the recipient may have directed by notice in accordance herewith.

9.2    **Waiver of Notice**.  The giving of notice may be waived in writing by the person or persons entitled to receive such notice, either before or after the time established for the giving of such notice.

10.    **MODIFICATIONS.**  Upon written request of any party then liable for any sum secured hereby, Mortgagee reserves the right to extend the term, or otherwise modify the terms, hereof or of the Note as Mortgagee and such person may from time to time deem appropriate and any such change shall not operate to release, in any manner, the liability of the original Mortgagor or Mortgagor's successors in interest.

11.    **SUCCESSORS AND ASSIGNS.**  All provisions herein contained shall be binding upon and inure to the benefit of the respective successors and assigns of the parties.

12.    **GOVERNING LAW; SEVERABILITY.**  This Mortgage shall be governed by the law of the state of Illinois.  In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, the conflict shall not affect other provisions of this Mortgage or the Note that can be given effect without the conflicting provision and to this end the provisions of this Mortgage and the Note are declared to be severable.

13.    **MORTGAGOR'S RIGHT TO POSSESSION.**  Mortgagor may be and remain in possession of the Property for so long as it is not in default hereunder or under the terms of the Note and Mortgagor may, while it is entitled to possession of the Property, use the same.

14.    **MAXIMUM INTEREST.**  No provision of this Mortgage or of the Note shall require the payment or permit the collection of interest in excess of the maximum permitted by law.  If any excess of interest in such respect is herein or in the Note provided for, neither

178921 v04.SE (3%2104!.DOC)

5383695

23

Mortgagor nor its successors or assigns shall be obligated to pay that portion of such interest that is in excess of the maximum permitted by law, and the right to demand the payment of any such excess shall be and is hereby waived and this Section 14 shall control any provision of this Mortgage or the Note that is inconsistent herewith.

15. **ATTORNEYS' FEES AND LEGAL EXPENSES.** In the event of any default under this Mortgage, or in the event that any dispute arises relating to the interpretation, enforcement, or performance of any obligation secured by this Mortgage, Mortgagee shall be entitled to collect from Mortgagor on demand all fees and expenses incurred in connection therewith, including but not limited to fees of attorneys, accountants, appraisers, environmental inspectors, consultants, expert witnesses, arbitrators, mediators, and court reporters. Without limiting the generality of the foregoing, Mortgagor shall pay all such costs and expenses incurred in connection with (a) arbitration or other alternative dispute resolution proceedings, trial court actions, and appeals; (b) bankruptcy or other insolvency proceedings of Mortgagor, any guarantor or other party liable for any of the obligations secured by this Mortgage, or any party having any interest in any security for any of those obligations; (c) judicial or nonjudicial foreclosure on, or appointment of a receiver for, any of the Property; (d) postjudgment collection proceedings; (e) all claims, counterclaims, cross-claims, and defenses asserted in any of the foregoing whether or not they arise out of or are related to this Mortgage; (f) all preparation for any of the foregoing; and (g) all settlement negotiations with respect to any of the foregoing.

16. **PREPAYMENT PROVISIONS.** If at any time after default and acceleration of the indebtedness secured hereby there shall be a tender of payment of the amount necessary to satisfy such indebtedness by or on behalf of Mortgagor, its successors or assigns, the same shall be deemed to be a voluntary prepayment such that the sum required to satisfy such indebtedness in full shall include, to the extent permitted by law, the additional payment required under the prepayment privilege as stated in the Note.

17. **TIME IS OF THE ESSENCE.** Time is of the essence under this Mortgage and in the performance of every term, covenant, and obligation contained herein.

18. **FIXTURE FILING.** This Mortgage constitutes a financing statement, filed as a fixture filing in the real estate records of the county of the state in which the real property described in Exhibit A is located, with respect to any and all fixtures included within the list of improvements and fixtures described in Section 1.2 of this Mortgage and to any goods or other personal property that are now or hereafter will become a part of the Property as fixtures.

19. **MISCELLANEOUS.**

19.1   Whenever the context so requires the singular number includes the plural herein, and the impersonal includes the personal.

178921 v04.SE (3%2104!.DOC)

5383695   24

19.2    The headings to the various sections have been inserted for convenient reference only and shall not modify, define, limit, or expand the express provisions of this Mortgage.

19.3    This Mortgage, the Note and the other documents, instruments, and agreements entered into by Mortgagor and Mortgagee in connection therewith (collectively, the "Loan Documents") constitute the final expression of the entire agreement of the parties with respect to the transactions set forth therein.  No party is relying upon any oral agreement or other understanding not expressly set forth in the Loan Documents.  The Loan Documents may not be amended or modified except by means of a written document executed by the party sought to be charged with such amendment or modification.

DATED as of the day and year first above written.

**MORTGAGOR:**

Bank of Waukegan:

_Barbara Richta_                                             TRUST OFFICER
By: Bank of Waukegan, as Trustee under the provisions of a Trust Agreement dated April 14, 1993 and known as Trust No. 203891

RIDER ATTACHED HERETO IS EXPRESSLY MADE A PART HEREOF AS PAGE 26A

178921 v04.SE (3%2104!.DOC)

5383695    25

STATE OF ILLINOIS

COUNTY OF

_____

|   | ss. |
|---|-----|

The foregoing instrument was acknowledged before me this <u>19th</u> day of
<u>September            </u>, 20 <u>03</u>, by
<u>       Barbara Richter         </u> as <u>  Trust Officer  </u> of
<u>     the Bank of Waukegan          </u>, as
<u>   Trustee under a Trust Agreement dated 04/14/93 and known as Trust No.</u>
<u>  203891    </u>.

Witness my hand and official seal.

My commission expires: <u>  8/22/05        </u>

[SEAL]

"OFFICIAL SEAL"
CYNTHIA M. JONES
Notary Public, State of Illinois
My Commission Expires Aug. 22, 2005

*Notary Public*

178921 v04.SE (3%2104!.DOC)

5383695

26

## TRUSTEE'S EXONERATION RIDER

This **MORTGAGE** is executed by the **BANK OF WAUKEGAN**, not personally or individually, but as Trustee under Trust Agreement dated 04/14/93 and known as Trust No. 203891 in the exercise of the power and authority conferred upon and vested in it as such Trustee. It is expressly understood and agreed by the instrument herein and by every personal now or hereafter claiming any right or security hereunder that nothing contained herein or in the NOTE secured by this instrument shall be construed as creating any liability on **BANK OF WAUKEGAN** personally to pay said NOTE or any interest that may accrue hereunder, or any indebtedness accruing hereunder or to perform any covenants either express or implied herein contained, including any environmental conditions, duties or obligations concerning the premises whether under any federal, state, or local statue, rule, regulation, or ordinance, all such liability, if any, being expressly waived, and that any recovery on this instrument and the NOTE secured hereby shall be solely against and out of the property hereby conveyed by enforcement of the provisions hereof and of said NOTE, but this waiver shall in no way affect the personal liability of any co-signer, endorser or guarantor of said NOTE. Each original and successive owner of holder of this instrument accepts the same upon the express condition that no duty shall rest upon the Trustee because of the execution, during its existence, or after its foreclosure to be personally liable for any environmental conditions, duties, or obligations concerning the premises whether under any federal, state, or local statue, rule, regulation, or ordinance. The Trustee makes no personal representations as to nor shall it be responsible for the existence, location or maintenance of the chattels herein described, if any, or of any environmental conditions, duties, or obligations concerning the property whether under any federal, state, or local statute, rule, regulation, or ordinance. The beneficiaries of this Trust, have management and control of the use of the property and as such, have the authority on their own behalf to execute any document as environmental representative but not as agent for or on behalf of the Trustee.

5383695

27

**ALTA Commitment**
**Schedule C**

**File No.: NCS-43062-CHI1**

**Legal Description:**

Lot 8 in Dunlay Meadows Second Addition, being a Subdivision of part of the Southeast Quarter of Section 19, Township 45 North, Range 12 East of the Third Principal Meridian, according to the Plat thereof recorded January 5, 1962 as Document No. 1134868 in Book 38 of Plats, page 25 and Certificate of Correction recorded November 15, 1963 as Document No. 1207537, in Lake County, Illinois.

Tax No: 08-19-412-013

Commonly Known as: 2635 W. Cornelia
Waukegan, IL

08CV4505
JUDGE GUZMAN
MAGISTRATE JUDGE VALDEZ
EDA

**[Loan No. 625480791]          ]**

(NOTE:  THIS PROMISSORY NOTE MAY REQUIRE A BALLOON PAYMENT AT
MATURITY)

### PROMISSORY NOTE

**$415,000.00 (U.S.)**                                    **Coppell, Texas**
                                                          **September 19, 2003**

        FOR  VALUE  RECEIVED,  the  undersigned  (individually  and  collectively,
"Borrower"), jointly and severally, promise to pay to the order of WASHINGTON MUTUAL
BANK, FA, a federal association, at its office at National Commercial Operations Center,
P. O. Box 9011, Coppell, TX 75019-9011, Attention:  MFL Closing, or at such other place as
the holder of this Note (hereinafter, "holder") may from time to time designate in writing, the
sum of Four Hundred Fifteen Thousand and 00/100 Dollars ($415,000.00) in lawful money of
the United States, with interest thereon *from the date of this Note until paid at the rates set
forth below*, computed on monthly balances.  Interest for each full calendar month during the
term of this Note shall be calculated on the basis of a 360-day year and twelve 30-day months.
Interest for any partial calendar month at the beginning of the term of this Note shall be
calculated  on  the  basis  of  a  360-day  year  and  the  actual  number  of  days  in  that  month.
Interest for any partial calendar month at the end of the term of this Note shall be calculated
on the basis of a 365-or 366-day year and the actual number of days in that month.

        **SECTION 1.    Initial Interest Rate.**

        The  per  annum  interest  rate  hereunder  (the  "Note  Rate")  shall  initially  be  5.900%.
The Note Rate is subject to adjustment as provided below:

        **SECTION 2.    Interest Rate Adjustments.**

                (a)      **Interest Adjustment Date**.  Beginning on October 1, 2008 (the "Initial
Interest Adjustment Date"), and on the same day of every sixth month thereafter, the Note
Rate shall be adjusted as provided below.  Any date on which the Note Rate is to be adjusted
as provided in this Note is referred to herein as the "Interest Adjustment Date."

                (b)      **The Index**.  Beginning with the Initial Interest Adjustment Date, the
Note Rate will be based on the Index (as defined below).  As used in this Note, the term
"Index" means the LIBOR Rate, as defined below.  The most recent Index figure available as
of 11:00 a.m., London Time, two (2) London Banking Days before each Interest Adjustment
Date is referred to in this Note as the "Current Index."

                (i)      Before each Interest Adjustment Date, holder will calculate the
new Note Rate by adding 2.600% to the Current Index.  Holder will then round the result of

EXHIBIT B

this addition to the nearest one-thousandth of one percentage point (0.001%); provided the Note Rate will never increase or decrease on any single Interest Adjustment Date more than one percentage point (1.00%) from the immediately preceding Note Rate except as set forth in Section 9 below.  Subject to the limits stated in Section 2(b)(ii) below, this amount will be the Note Rate until the next Interest Adjustment Date.

(ii)    Except as set forth in Section 9 below, the Note Rate will never be greater than 10.500% per annum (the "Rate Limit"), so long as there has not been any sale or transfer of the Property (as hereinafter defined) or any change in the entity, ownership or control of Borrower.  *Following any such sale, transfer or change, the Note Rate may be adjusted as provided in the Security Instrument (as defined below).*

(iii)    If for any reason holder fails to make an adjustment to the Note Rate or the Monthly Payment Amount as described in this Note, regardless of any notice requirement, holder may, upon discovery of such failure, then make such adjustment as if it had been made on time.  Borrower agrees not to hold holder responsible for any damages which may result from holder's failure to make the adjustment and to allow holder, at its option, to apply any excess monies which Borrower may have paid to partial prepayment of the unpaid principal balance of this Note.

(c)    **Definitions.**    As used herein, the following terms shall have the meanings set forth below:

"LIBOR Rate" means the rate, rounded to the nearest one-thousandth of one percentage point (0.001%) for deposits in United States dollars for maturities of six months which appears on Telerate Page 3750 as of the relevant date and time of determination.

"London Banking Day" means any day (i) which is not a Saturday or Sunday and (ii) on which commercial banks are generally open for business (including dealings in foreign exchange and foreign currency deposits) in London, England and dealings are carried on in the London interbank market.

"Telerate Page 3750" means the display page so designated on the Telerate Service (or such other page as may replace that page on such service, or such other service as may be nominated as the information vendor for the purpose of displaying the British Bankers Association fixing of the London Interbank Offered Rate).

(d)    **Illegality; Unavailability of LIBOR Rate.**

(i)    If in the sole judgment of holder (A) it shall become unlawful for holder to obtain funds in the London interbank market or to continue to fund or maintain principal amounts bearing interest at rates determined by reference to the LIBOR Rate; or (B) because of conditions in the relevant money markets, the LIBOR Rate will not adequately reflect the cost to holder of making, funding or maintaining the principal amount of this Note; or (C) the LIBOR Rate is no longer available or is no longer calculated or reported on a basis

reasonably comparable to the basis on which it is calculated and reported on the date of this Note, then, in any such event, holder shall choose a new index which reasonably reflects the cost to holder of making, funding or maintaining the principal amount of this Note, which new index shall then be the Index. Holder shall give Borrower notice of such choice.

(ii)    For purposes of this Note, all determinations hereunder may, in the sole discretion of holder, be made as if holder had actually funded and maintained the principal balance hereof through the purchase of deposits having successive terms of six months each, extending from one Interest Adjustment Date to the next, and bearing interest at a rate equal to the Index rate during each such six-month period.

**SECTION 3.    Monthly Payments.**

Beginning on November 1, 2003 (the "Initial Monthly Payment Date") and on the same day of each and every calendar month thereafter throughout the term of this Note (the "Monthly Payment Dates"), Borrower shall make monthly payments of principal and interest (the "Monthly Payment Amounts") to holder as follows:

(a)    Beginning on November 1, 2003 the Monthly Payment Amount shall be Two Thousand Four Hundred Sixty One and 52/100 Dollars ($2,461.52) for each month prior to the Initial Payment Change Date (as defined in subparagraph (b) below.

(b)    The Monthly Payment Amount shall be adjusted semi-annually beginning on November 1, 2003 (the "Initial Payment Change Date") to an amount sufficient to fully repay the unpaid principal balance of this Note as of the last day of the month immediately preceding the Amortization Adjustment Date (as hereinafter defined), together with interest at the Note Rate as adjusted on the first day of the month immediately preceding the Amortization Adjustment Date, by the date that is 360 months from the first day of the calendar month immediately preceding the calendar month in which the Initial Monthly Payment Date occurs in substantially equal installments. Any date on which the Monthly Payment Amount will be adjusted pursuant to this Section 3 is referred to as the "Amortization Adjustment Date."

**SECTION 4.    Maturity.**

Unless sooner repaid by Borrower, the entire unpaid principal balance of this Note, plus all accrued but unpaid interest, and all other amounts owing hereunder or under the Security Documents (as defined in Section 8) shall be due and payable in full on October 1, 2033 (the "Maturity Date").

**SECTION 5.    Application of Payments.**

Payments shall be applied: (a) first, to the payment of accrued interest; (b) second, at the option of holder, to the payment of any other amounts owing under this Note or secured by the Security Documents, other than accrued interest and principal, including, but not

limited to advances holder may have made for attorneys' fees or for taxes, assessments, insurance premiums, or other charges on any property given as security for this Note and late charges due hereunder; and (c) third, to the reduction of principal of this Note.

### SECTION 6.  Prepayment.

Borrower may prepay its obligation under this Note only on the terms and subject to the conditions set forth in the addendum to this Note attached hereto and incorporated herein by this reference; provided, however, that if no such addendum is attached to this Note, Borrower may, upon 30 days' prior written notice to holder, prepay its obligation under this Note in full or in part on any Monthly Payment Date without payment of a prepayment premium.

### SECTION 7.  Late Charge.

If any amount payable hereunder is paid more than 15 days after the due date thereof, Borrower promises to pay a late charge of 5% of the delinquent amount as liquidated damages for the extra expense in handling past due payments.

### SECTION 8.  Security

This Note is secured by a deed of trust, security agreement, assignment of leases and rents, and fixture filing or a mortgage, security agreement, assignment of leases and rents, and fixture filing (the "Security Instrument") of even date herewith and executed by Borrower, encumbering the real property described in the Security Instrument. The Security Instrument and any and all other documents securing this Note are collectively referred to as the "Security Documents"; provided, however, that "Security Documents" specifically shall not mean and shall not include the certificate and indemnity agreement regarding hazardous substances being delivered concurrently herewith to holder by Borrower (the "Indemnity Agreement"). The real property and the other collateral provided for in the Security Documents are collectively referred to as the "Property."

### SECTION 9.  Default; Remedies.

If default is made in the payment of any amount payable hereunder when due or in the keeping of any covenant of the Security Documents, then, at the option of holder, the entire indebtedness evidenced hereby shall become immediately due and payable. Upon default, and without notice or demand, all amounts owed under this Note, including all accrued but unpaid interest, shall thereafter bear interest at a variable rate, adjusted at the times at which the Note Rate would otherwise have been adjusted pursuant to Section 2, of 5% per annum above the Note Rate which would have been applicable from time to time had there been no default (the "Default Rate") until such default is cured. Failure to exercise any option granted to holder hereunder shall not waive the right to exercise the same in the event of any subsequent default. Interest at the Default Rate shall commence to accrue upon default under this Note, including the failure to pay this Note at maturity.

### SECTION 10.    Attorneys' Fees.

In the event of any default under this Note, or in the event that any dispute arises relating to the interpretation, enforcement, or performance of this Note, holder shall be entitled to collect from Borrower on demand all fees and expenses incurred in connection therewith, including but not limited to fees of attorneys, accountants, appraisers, environmental inspectors, consultants, expert witnesses, arbitrators, mediators, and court reporters. Without limiting the generality of the foregoing, Borrower shall pay all such costs and expenses incurred in connection with:  (a) arbitration or other alternative dispute resolution proceedings, trial court actions, and appeals; (b) bankruptcy or other insolvency proceedings of Borrower, any guarantor or other party liable for any of the obligations of this Note or any party having any interest in any security for any of those obligations; (c) judicial or nonjudicial foreclosure on, or appointment of a receiver for, any property securing this Note; (d) postjudgment collection proceedings; (e) all claims, counterclaims, cross-claims, and defenses asserted in any of the foregoing whether or not they arise out of or are related to this Note or any security for this Note; (f) all preparation for any of the foregoing; and (g) all settlement negotiations with respect to any of the foregoing.

### SECTION 11.    Miscellaneous

(a)    Every person or entity at any time liable for the payment of the indebtedness evidenced hereby waives presentment for payment, demand, and notice of nonpayment of this Note.  Every such person or entity further hereby consents to any extension of the time of payment hereof or other modification of the terms of payment of this Note, the release of all or any part of the security herefor or the release of any party liable for the payment of the indebtedness evidenced hereby at any time and from time to time at the request of anyone now or hereafter liable therefor.  Any such extension or release may be made without notice to any of such persons or entities and without discharging their liability.

(b)    Each person or entity who signs this Note is jointly and severally liable for the full repayment of the entire indebtedness evidenced hereby and the full performance of each and every obligation contained in the Security Documents; provided, however, that if, but only if, a Limited Liability Addendum is attached to and incorporated into this Note, the liability of any person or entity that signs this Note will be limited as provided in such Addendum.

(c)    The headings to the various sections have been inserted for convenience of reference only and do not define, limit, modify, or expand the express provisions of this Note.

(d)    Time is of the essence under this Note and in the performance of every term, covenant and obligation contained herein.

(e)    This Note is made with reference to and is to be construed in accordance with the laws of the state where the Property is located.

(f)    Notwithstanding any contrary provision of applicable law, each general partner in any partnership which is a party hereto, agrees that holder need not exhaust the partnership assets of such partnership before executing upon the assets of such general partner in satisfaction of the obligations evidenced hereby or by any other document, instrument or agreement entered into by such partnership in connection with the loan evidenced by this Note, but may execute upon such general partner's assets prior to, at the same time as, or after executing upon the partnership assets of such partnership. Each such general partner shall be jointly and severally liable for such obligations with all other persons and entities liable therefor.

If holder at any time discovers that this Note or any of the Security Documents contains any error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, Borrower shall, upon demand by holder re-execute any such documents as are necessary or appropriate to correct any such error and holder shall have no liability to Borrower or any other person or entity as a result of such error. If this Note or any of the Security Documents are lost, stolen, mutilated or destroyed and holder delivers to Borrower an indemnification agreement reasonably indemnifying Borrower against any loss or liability resulting therefrom, Borrower will execute and deliver to holder a replacement thereof in form and content identical to the original document which will have the effect of the original for all purposes.

DATED as of the day and year first above written.

_____
Jorge Torres

_____
Juana M. Torres

_____                    TRUST OFFICER
Bank of Waukegan, as Trustee under the provisions of a Trust Agreement dated April 14, 1993 and known as Trust No. 203891 and not individually or personally

RIDER ATTACHED HERETO IS EXPRESSLY MADE A PART HEREOF AS EXHIBIT "A"

**Exhibit "A"**

**TRUSTEE'S EXONERATION RIDER**

This **PROMISSORY NOTE** is executed by **BANK OF WAUKEGAN,** not personally or individually, but as Trustee under Trust Agreement dated 04/14/93 and known as Trust No. 203891 in the exercise of the power and authority conferred upon and vested in it as such Trustee. It is expressly understood and agreed by each original and successive owner or holder of this NOTE that nothing herein contained shall be construed as creating any personal liability on **BANK OF WAUKEGAN** to pay this NOTE or any interest that may accrue hereunder, all such liability, if any, being expressly waived, and that any recovery on this NOTE or on instrument given to secure its payment shall be solely against and out of the property described in said instrument by enforcement of the provisions contained in said instrument and NOTE, but this waiver shall in no way affect the personal liability of any co-signed, endorser or guarantor of this NOTE. Each original and successive owner or holder of this NOTE accepts the same upon the express condition that no duty shall rest upon the Trustee to sequester the rents, issues and profits arising from the property described in said instrument or the proceeds arising from the sale or other disposition thereof or for any environmental conditions,  duties, or obligations concerning the property whether under any federal, state, or local statute, rule, regulation or ordinance. The Trustee makes no personal representations as to nor shall it be responsible for the existence, location or maintenance of the chattels herein described, if any, or of any environmental conditions, duties or obligations  (expressed or implied) concerning the property whether under any federal, state, or local statute, rule, regulation, or ordinance. The beneficiaries of this Trust have management and control  of the use of the property and as such, have authority on their own behalf to execute documents as environmental representative but not as agent for or on behalf of the Trustee.